**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MALIKUL AZIZ, RONNIE CRUZ, and RUDAN RAMSAHAI, individually and on behalf of all of those similarly situated<br><br>    *Plaintiffs,*<br>v.<br>CITY OF NEWARK,<br>    *Defendant.* | Civil Action No. 20-10309<br><br>**OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

  Currently pending before the Court is the parties' proposed order for class certification pursuant to Federal Rule of Civil Procedure 23(b)(2). D.E. 226. The Court has considered the proposed order and Plaintiffs' letters in support of the order.[1] For the reasons that follow, Court will not enter the proposed order.

  I.  **BACKGROUND**[2]

  Plaintiffs are Newark police officers. D.E. 1 ("Compl.") ¶ 48. As part of their training, Plaintiffs and the other putative class members were required to attend the New Jersey State Police Academy in Sea Girt, New Jersey, which they did in either August to December of 2017 or August to December of 2018. *Id.* ¶¶ 49-51. While there, Plaintiffs were employed as cadets. *Id.* ¶ 52. Defendant required Plaintiffs to waive their right to overtime and were paid $17.50 per hour. D.E.

---

[1] D.E. 230, D.E. 231, and D.E. 239. Defendant has not taken a position as to the issues discussed herein, other than to join in the initial letter and proposed order.

[2] These facts are drawn from Plaintiff's Complaint, D.E. 1, as well as the docket entries referred to in note 1. The Court accepts the allegations as true for the sake of this decision.

239 at 1; D.E. 230 at 1.  Plaintiffs allege that they were required to work over forty hours but were not paid for any overtime because of their waivers.  D.E 239 at 1.  Plaintiffs maintain that "[s]imilarly situated members of both the 2017 and 2018 class were subject to the same schedules and the same withholdings of their overtime wages[,]" meaning that Plaintiffs and each putative class member are entitled to the same amount of unpaid overtime.  *Id.* at 1-3.

Plaintiffs filed a Complaint on August 11, 2020, asserting three claims:  one for violation of the federal Fair Labor Standards Act of 1938, (FLSA), 29 U.S.C. § 201, *et seq.*; and two for violations of New Jersey wage laws.  Compl. ¶¶ 79-102.  Plaintiffs seek to recover unpaid overtime, punitive damages, and reasonable fees and costs and an order prohibiting Defendants "from continuing to maintain its illegal policy, practice or customs in violation of federal and state wage and hour laws[.]"  *Id.* ¶ 102.  The Complaint asserts an FLSA collective action as well as a class action under Federal Rule of Civil Procedure 23(b)(3).  *Id.* ¶¶ 21, 37.

The parties filed a joint letter with a proposed order for class certification.  D.E. 226.  The proposed order indicates that Plaintiffs would prosecute their three claims as a class under Federal Rule of Civil Procedure 23(b)(2), referencing only equitable relief.  D.E. 226-1 at 2-3 ¶ 3; *id.* at 3 ¶ 4.  Plaintiffs never moved in connection with a collective action or a Rule 23(b)(3) class.  Upon review, the Court directed Plaintiffs to submit letters addressing Plaintiffs' basis for proceeding as a Rule 23(b)(2) class and describing the proposed class notice.  D.E. 227.  Plaintiffs responded.  D.E. 230; D.E. 231.  The Court then convened a telephone conference, explaining its concerns and ordering Plaintiffs to submit a further letter addressing those concerns.  D.E. 235.  Plaintiffs then filed the letter.  D.E. 239.

II.     **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 23 governs class actions. *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012). "[E]very putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Id.* at 590 (citing Fed. R. Civ. P. 23(a)-(b)). Plaintiffs first bear the burden of showing that the proposed classes satisfy the four requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) There are questions of law or fact common to the class;
> (3) The claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). These four prongs are often referred to as numerosity, commonality, typicality, and adequacy. *See, e.g., Erie Ins. Exch. v. Erie Indem. Co.*, 722 F.3d 154, 165 (3d Cir. 2013).

Plaintiffs also must show that the proposed classes satisfy Rule 23(b)(1), (b)(2), or (b)(3). *Marcus*, 687 F.3d at 590.

III.    **ANALYSIS**

The Court has concerns regarding whether a class proceeding only under Federal Rule of Civil Procedure 23(b)(2) (a "(b)(2) class") can recover monetary damages in light of *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). Plaintiffs take the position that a (b)(2) class can recover such damages such that certification under Rule 23(b)(2) is proper. *E.g.*, D.E. 239 at 1.

In *Dukes*, the putative (b)(2) class alleged that their employer, Walmart, had committed employment discrimination on the basis of sex, contrary to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-1, *et seq.* 564 U.S. at 342. As a class certified under Rule 23(b)(2), they sought

3

"injunctive and declaratory relief," as well as backpay. *Id.* The Supreme Court unanimously held that the class had been improperly certified as to the backpay claim. *Id.* at 360. The Court acknowledged that *Ticor Title Insurance Co. v. Brown*, 511 U.S. 117, 121 (1994), had "expressed serious doubt about whether claims for monetary relief may be certified under" Rule 23(b)(2). *Id. Dukes* did not definitively decide whether (b)(2) classes can seek monetary relief; rather, the Court held "that they may not, at least where (as here) the monetary relief is not incidental to the injunctive or declaratory relief." *Id.* Instead, the *Dukes* Court opined that if a putative class seeks individualized awards of monetary damages, Rule 23(b)(3) is the proper vehicle. *Id.* at 362. This is in part because Rule 23(b)(2) lacks an opt-out mechanism and does not obligate the district court to notify class members of a pending action. *Id.* at 362-63. The Court in *Dukes* explained that "[i]n the context of a class action predominantly for money damages we have held that absence of notice and opt out violates due process." *Id.* at 363.

Plaintiffs cite decisions from the Eastern District of Pennsylvania that have held that a (b)(2) class may obtain monetary relief where such relief is incidental to the injunctive or declaratory relief sought and does not require the finder of fact to make individualized determinations for the class members. D.E. 239 at 3 (discussing *Scanlan v. Am. Airlines Grp., Inc.* (*Scanlan I*), -- F. Supp. 3d --, No. 18-4040, 2021 WL 4704708 (E.D. Pa. Oct. 8, 2021), *amended*, *Scanlan v. Am. Airlines Grp., Inc.* (*Scanlan II*), No. 18-4040, 2022 WL 1028038 (E.D. Pa. Apr. 6, 2022); *Pfeifer v. Wawa, Inc.*, No. 16-497, 2018 WL 4203880 (E.D. Pa. Aug. 31, 2018)). These cases, however, are inapposite.[3]

---

[3] Plaintiffs also cite decisions of Courts of Appeals that predate *Dukes*. *See, e.g.*, D.E. 239 at 2 (discussing *Baribin v. Aramark Co.*, No. 02-8057, 2003 WL 355417 (3d Cir. Jan. 24, 2003); *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir. 1998)).

4

In *Scanlan I*, the putative class consisted of commercial airline pilots who were also in the United States Air Force Reserve. *See* 2021 WL 4704708, at *1. Plaintiffs sued the defendants under the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301, *et seq.*, and the common law, alleging violations of that statute and breach of contract. *Id*. The plaintiffs claimed that members of the Reserve were not treated as other employees because their time in the service did not count as compensable leave time under the defendants' profit-sharing plan, while time spent on jury duty or bereavement was counted as such. *Id.* at **1-2. As a result, the pilots who had gone on military leave received a lower share of the profits. *Id.* The *Scanlan I* court observed that "[t]his situation will continue if and when profits are distributed among Plan participants in the future." *Id.* at *2.

The court in *Scanlan I* found that it could certify a (b)(2) class despite the defendants' objections that the plaintiffs sought individualized money damages. *Id.* at **9-11. The district court observed that the putative "class primarily seeks declaratory and injunctive relief in declaring that [defendants] have violated USERRA by failing to credit or compensate short-term military leave and enjoining [defendants] to credit and compensate this short-term military leave the same as jury duty and bereavement leave in the future." *Id.* at *11. The court continued that the award

---

The court in *Gates v. Rohm & Haas Co.*, 655 F.3d 255 (3d Cir. 2011), did cite to *Allison*, but the *Gates* court did so only in providing a citation for a quotation from *Dukes*. *See Gates*, 655 F.3d at 263. *Scanlan I*, a case cited by Plaintiffs, indicated that as of October of 2021, the Third Circuit had "not yet reached the issue of whether incidental relief is still permitted in a (b)(2) class following *Wal-Mart*." *Scanlan*, 2021 WL 4704708, at *10 n.8.

Finally, this Court did not "determine whether monetary damages can be certified under 23(b)(2)[,]" D.E. 239 at 2, in *Luxama v. Ironbound Express, Inc.*, No. 11-2224, 2018 WL 6819341 (D.N.J. Dec. 27, 2018). Rather, the Court acknowledged that it was an unresolved issue. *See* 2018 WL 6819341, at *15 n.9. Additionally, in light of *Dukes* and *Gates* and "assuming *arguendo* that Rule 23(b)(2) allows for 'incidental' damages," the Court limited the class's potential remedies "to declaratory and injunctive relief only[]" because the plaintiffs in that case sought "individualized damage determinations[.]" *Id.*

5

of money damages would be incidental to the declaration and injunction and that calculating the appropriate amount of monetary relief would not require the court to evaluate "any subjective difference in circumstance." *Id*.

In *Scanlan II*, the defendants moved "to alter or amend the class definition to exclude from the certified class those pilots who have retired from the military or" from one of the defendants' employ. 2022 WL 1028038, at *1. The defendants maintained that Scanlan and other retirees should be excluded from a (b)(2) class seeking an injunction. *See id.* at *3. The *Scanlan II* court agreed that since Scanlan would no longer need to take military leave, he would "not benefit from any prospective relief in the form of an injunction or declaration." *Id*. The plaintiffs suggested that the retired pilots should instead proceed under Rule 23(b)(3), and the defendants did not object. *Id.* The court agreed with the plaintiffs' suggestion, reasoning as follows:

> In this action, the injunctive and declaratory relief that plaintiffs seek is prospective in nature and therefore will not benefit those class members, like Scanlan, who have retired from either [defendants] or the military and will therefore no longer take short-term military leave with [defendants]. However, should plaintiffs succeed in this action, those retired pilots could still be entitled to monetary relief for the short-term military leave taken during the class period prior to their retirement.

*Id.* at *5. Accordingly, the court granted defendants' motion, dividing the pilots into those who were still eligible to participate in the profit-sharing plan—who could proceed under Rule 23(b)(2), and those who were not—who could proceed under Rule 23(b)(3). *Id.* at **6-7.

In *Pfeifer*, the putative class sought the court's approval of a settlement and class certification under, *inter alia*, Rule 23(b)(2). 2018 WL 4203880, at *1. The class representatives were former employees of Wawa who had been terminated. *Id.* at *2. Under Wawa's employee stock ownership plan ("ESOP"), terminated employees had previously been allowed to hold stock in Wawa through the plan until they were sixty-eight-years-old if the value of their benefits was

over $5,000. *Id.* at *1. Because the ESOP was governed by the Employee Retirement Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq.*, the plan administrators issued summary plan descriptions ("SDPs") from time to time. *Id.* The SDPs uniformly stated that benefits would be "'paid in the same form and manner as retirement benefits,' and that 'no amendment to the Plan will reduce the benefit you have already earned, or divest you of any entitlement to a benefit.'" *Id.* (citation to the record omitted). However, the ESOP was amended in 2015, and terminated employees were no longer allowed to hold shares through the ESOP. *Id.* The terminated employees were also forced to sell their shares at what they claimed to be an artificially low price. *Id.* at **1-2.

The plaintiffs brought a nine-count amended complaint, accusing the defendants of multiple violations of ERISA. *Id.* at *2. The case settled, and the plaintiffs asked the court to approve the settlement and to certify a (b)(2) class as to certain claims. *Id.* at *3. Assessing the parties' arguments regarding certification of a (b)(2) class, the *Pfeifer* court found that "by effectuating the Plan Amendment, Defendants have 'acted or refused to act on grounds that apply generally to the class, so that the final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.'" *Id.* at *5 (quoting Fed. R. Civ. P. 23(b)(2)). The plaintiffs sought "a declaration and an order requiring that [C]lass [M]embers' benefits be calculated either under the terms of the Plan without the 2015 Plan Amendment or liquidated at fair market value." *Id.* (alterations in originals) (citation to the record omitted). Citing an unreported case from the Western District of Pennsylvania, which observed that courts often certify (b)(2) classes when "an ERISA plan administrator makes a uniform decision about administering the Plan as it applies to the putative class members[,]" the court in *Pfeifer* determined that certification was proper. *Id.* (quoting *Cottillion v. United Refin. Co.*, No. 09-140E, 2013 WL

7

5936368, at *6 (W.D. Pa. Nov. 5, 2013), *aff'd*, 781 F.3d 47 (3d Cir. 2015)).  Although granting an equitable remedy would entail awarding monetary relief, the *Pfeifer* court found that such relief was allowable, given that the money damages would flow directly from the declaratory relief.  *Id.*

In *Scanlan* and *Pfeifer*, the plaintiffs could pursue equitable relief because a declaration and/or injunction could prevent ongoing and future harm to those plaintiffs.  In *Scanlan II*, the court permitted those who were still employed by the defendants and eligible to partake in the profit-sharing plan to seek, as a Rule 23(b)(2) class, equitable relief that would remold the plan into a form consistent with USERRA, while those whose injuries were purely in the past were required to seek monetary damages as a Rule 23(b)(3) class.  *See Scanlan II*, 2022 WL 1028038, at **5-7.  In *Pfeifer*, the plan participants were presumably entitled to future receipt of benefits and could maintain a (b)(2) class to ensure that future benefits were given in a form consistent with the terms of the settlement and the original ESOP.  2018 WL 4203880, at *5.

Here, assuming the Third Circuit would agree with *Scanlan* and *Pfeifer*'s conclusions regarding the availability of incidental damages to a (b)(2) class, the Court is not convinced that Plaintiffs are entitled to the equitable relief that would serve as the anchor-remedy for a (b)(2) class.  Both injunctions and declaratory relief are prospective in nature.  *Scanlan II*, 2022 WL 1028038, at *3.  "When, as in this case, prospective relief is sought, the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct."  *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).

Plaintiffs have not shown that they are likely to suffer future harm from defendant's conduct.  All of the harm they complain of occurred in the past—in 2017 or 2018.  *See also Parkell v. Senato*, 704 F. App'x 122, 125 (3d Cir. 2017) (holding district court "properly concluded that [plaintiff] could not seek declaratory relief—which is by definition prospective in nature and

8

cannot be issued to address past wrongs.") (internal quotation marks and citation omitted). Although Plaintiffs contend that "[m]onetary damages would be of little consolation if Defendant is permitted to go on violating the law with impunity[,]" D.E. 230 at 2, this is plainly not true for the named Plaintiffs. It appears that such Plaintiffs will receive no benefit from a change to the overtime policy at this time or going forward. Instead, the only apparent relief available to such Plaintiffs is to be compensated for the overtime that they did not receive in 2017 and 2018.

In other words, even if the monetary relief Plaintiffs seeks is "incidental" to declaratory relief, because they cannot pursue declaratory relief in the first place (for lack of standing) because they will not benefit from such relief, their argument falls short. Because Plaintiffs can only seek unpaid overtime, Plaintiffs can seemingly proceed either by means of the FLSA's collective-action mechanism or under Rule 23(b)(3). *See Scanlan II*, 2022 WL 1028038, at **5-7 (allowing plaintiffs whose harm would not be remedied by prospective relief to proceed as a Rule 23(b)(3) class). As a result, the Court declines to enter the proposed consent order.

### IV. CONCLUSION

For the foregoing reasons, and for good cause shown,

It is on this 19th day of April 2022 hereby

**ORDERED** that the parties' request that the Court enter the proposed order for class certification, D.E. 226, is **DENIED**.

_____
John Michael Vazquez, U.S.D.J.